### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **VERA JOHNSON** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:13CV205-HSO-RHW** |
| | § | |
| | § | |
| **JASON B. SIMMONS** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S [95] MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S [97] MOTION TO EXCLUDE PLAINTIFF'S EXPERT'S OPINIONS

BEFORE THE COURT are the Motion for Summary Judgment [95] and Motion to Exclude Plaintiff's Expert's Opinions [97] filed by Defendant Jason B. Simmons on April 13, 2015. These Motions are now fully briefed. For the reasons that follow, the Court finds that the Motion for Summary Judgment [95] should be denied and that the Motion to Exclude Plaintiff's Expert's Opinions [97] should be granted in part and denied in part.

## I. BACKGROUND

A. Factual Background

This is a dental malpractice case arising out of dental work Defendant Jason B. Simmons ("Defendant" or "Dr. Simmons") performed on Plaintiff Vera Johnson ("Plaintiff" or "Mrs. Johnson"). Compl. [1-1] at 5. Plaintiff's general dentist referred her to Dr. Simmons because she was interested in replacing some missing teeth, specifically tooth numbers 18, 19, and 30. Dep. of Dr. Jason Simmons [95-2]

-1-

at 59. The dispute in this case centers around procedures Dr. Simmons performed at locations 18 and 19. Dr. Simmons explained in his deposition that "18 would be the second molar on the left posterior and 19 would be the first molar." Dep. of Dr. Jason Simmons [95-2] at 50.

Dr. Simmons conducted an initial consultation with Plaintiff on January 12, 2010. *Id.* at 60. After reviewing a panoramic x-ray Dr. Simmons had taken, he was able to measure and determine that, in his opinion, there was sufficient bone height to place the implants. *Id.* at 83. Dr. Simmons developed a treatment plan for Plaintiff which included a bone graft "on the lower left in the area of 18 and 19, which is [a] block graft utilizing her own bone." *Id.* at 69. "After [Plaintiff] healed, the next step would be placing the implants, 18 and 19 and tooth number 30 . . . ." *Id.* at 70.

Dr. Simmons performed the bone graft on February 23, 2010, and inserted the implants in locations 18, 19, and 30 on September 28, 2010. *Id.* at 125-26, 130-31; Dental Records [95-1] at 45. According to Plaintiff, after Dr. Simmons placed the implants, she felt pain "like a nerve running down the side of [her] left jaw and . . . stopping at [her lip]. And it never stopped." Dep. of Vera Johnson [95-1] at 14. Plaintiff describes the pain as pulsing or shooting down from her jaw to her lower lip. *Id.* at 63. Plaintiff asserts that she informed Dr. Simmons "about the nerve in [her] jaw and stopping in my lip," but that Dr. Simmons told her "to give it more

time." *Id.* at 57.  According to Plaintiff, Dr. Simmons also prescribed medications, but these did not ease the pain.  *Id.* at 62-66.

In June 2011, Dr. Simmons recommended that Plaintiff remove the implants from locations 18 and 19 and replace them with shorter implants.  Dep. of Dr. Jason Simmons [95-2] at 234.  Dr. Simmons performed this surgery on July 26, 2011.  *Id.* at 234-35; Dental Records [95-1] at 46.  Because the original implants were "too tight," Dr. Simmons was initially unable to remove them.  Dep. of Dr. Jason Simmons [95-2] at 236.  On August 9, 2011, Dr. Simmons used a trephine hollow drill that went over each implant to core out the bone around the outside of the implants so that he could extract them.  *Id.* at 236-38; Dental Records [95-1] at 46.  Dr. Simmons then filled the remaining holes with a bone graft and collagen plug.  Dep. of Dr. Jason Simmons [95-2] at 241.  Dr. Simmons' medical records for Plaintiff reflect that on January 3, 2012, Plaintiff's "[p]ain was still present but numbness wasn't as noticeable."  Dental Records [95-1] at 46.

On January 16, 2012, Plaintiff sought a second opinion from Dr. Robert Pfeffle ("Dr. Pfeffle").  Dep. of Vera Johnson [95-1] at 92; *see also* Dental Records [95-1] at 46.  According to Plaintiff, she informed Dr. Pfeffle that she suffered from severe pain and numbness and had experienced pain running from her jaw since the day that Dr. Simmons had placed the implants.  Dep. of Vera Johnson [95-1] at 93.  According to Plaintiff, Dr. Pfeffle told her that she had nerve damage and recommended that she undergo nerve repair surgery.  *Id.* at 94-95.  Dr. Pfeffle

referred Plaintiff to Dr. Patrick Lewis at the University of Alabama Birmingham ("UAB").  Dep. of Vera Johnson [95-1] at 95, 100; *see also* Dep. of Dr. Somsak Sittitavornwong [95-5] at 10-11.  After Dr. Lewis consulted with Plaintiff, he referred Plaintiff to Dr. Somsak Sittitavornwong ("Dr. Sittitavornwong") at UAB.[1]

Dr. Sittitavornwong conducted an evaluation of Plaintiff on August 27, 2012. Dep. of Dr. Somsak Sittitavornwong [95-5] at 25-26.  Dr. Sittitavornwong testified in his deposition that he initially diagnosed Plaintiff as having an issue with the trigeminal nerve, which is in the lower left jaw, which was consistent with his ultimate findings.  *Id.* at 30-31.

Dr. Sittitavornwong performed nerve perception or sensory testing on Plaintiff, comparing the right and left sides of her mouth.  *Id.* at 103-04.  Based on his observations and testing, Dr. Sittitavornwong presented Plaintiff with three treatment options.  *Id.* at 32, 107-08.  The first option was for Dr. Sittitavornwong to repair the nerve with a cadaveric nerve graft and conduct a bone graft reconstruction at the same time, which would give Plaintiff the option of receiving dental implants in the future in order to prevent further bone erosion.  *Id.* at 32-34. The second option was nerve repair alone, and option number three was "just do nothing."  *Id.* at 34.  Plaintiff elected the first option.  *Id.* at 38.

---

[1] Dr. Sittitavornwong is sometimes referred to in the record as "Dr. Sitti."  Dr. Sittitavornwong's name is also misspelled at times.  *See, e.g.,* Dep. of Dr. Somsak Sittitavornwong [95-5] at 1 (spelling Dr. Sittitavornwong's name as "Sittiavornwong").

Dr. Sittitavornwong performed the nerve repair and bone graft on September 19, 2012. *Id.* at 41. Dr. Sittitavornwong "open[ed] up the bone window from left lower jaw at that area" such that he could "start seeing nerve running here in the jawbone." *Id.* at 45. Dr. Sittitavornwong was able to see "deform[ed] or scar tissue" or "scar adhesion" around the nerve in the area around locations 18 and 19. *Id.* at 45, 49. Dr. Sittitavornwong removed this portion of the nerve and sent it to pathology, which revealed it to be a traumatic neuroma. *Id.* at 49. Dr. Sittitavornwong explained during his deposition that a traumatic neuroma means that "the nerve had been changed from the normal physiologic form and could be related to the trauma and causing nerve scar around that, [when it] tried to heal." *Id.* at 49-50. According to Dr. Sittitavornwong, this trauma was in the "area" of locations 18 and 19, but "probably more interior" or "[t]o the front." *Id.* at 52.

Dr. Sittitavornwong then inserted a nerve graft that ran the length of the inferior alveolar nerve ("IAN") until it exited the mental foramen into the mental nerve. *Id.* at 61. Dr. Sittitavornwong removed this portion of the nerve and replaced it with a graft that was about a centimeter in length. *Id.* at 62. Dr. Sittitavornwong was able to cut the bone window that he removed at the beginning of surgery and use it both to replace the bone window and as a bone graft for preparing the area for future dental implants in order to "gain more width and height." *Id.* at 63-65. On June 20, 2013, Dr. Sittitavornwong placed dental implants in area numbers 18 and 19. *Id.* at 92. Dr. Sittitavornwong characterized

the procedures as "successful nerve/bone graft reconstruction and dental implant." *Id.* at 115.

B.    Procedural History

Plaintiff filed a Complaint [1-1] on February 15, 2013, in the Circuit Court of Jackson County, Mississippi, naming Dr. Simmons as the sole Defendant. The Complaint advances claims against Dr. Simmons for negligence related to his dental treatment of Plaintiff, specifically in performing an osseous bone graft and inserting dental implants. Compl. [1-1] at 11-13. Dr. Simmons removed the case to this Court on May 2, 2013, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Notice of Removal [1] at 1.

On September 16, 2013, Plaintiff designated Dr. James D. Ruskin ("Dr. Ruskin") as an expert "in the fields of dentistry, periodontics, and oral and maxillofacial surgery," Pl.'s Designation of Experts [51-3] at 2, and disclosed Dr. Ruskin's initial expert report [97-1]. On August 28, 2014, Dr. Ruskin issued an Amended Medical Expert Report [97-2]. Dr. Ruskin concluded that Plaintiff

> sustained a nerve injury to the left inferior alveolar nerve under implant sites #18 and #19. The injury occurred during the drilling and placement of the implants around the #19 and #18 sites. The injury to the IAN in this case occurred in the canal around sites #19 and #18 more likely than not during the drilling of the implants in the #18 and #19 sites.
>
> *    *    *
>
> [I]t is reasonable to believe that the injury was caused by the osteotomy of the implants entering the IAN canal itself rather than the final placements of the implants.

Am. Report [97-2] at 4-5.

Dr. Ruskin opines that Dr. Simmons deviated from the standard care in several respects, including "Dr. Simmons['] refusal to diagnose an accurate height from the crest of bone to the interior alveolar nerve canal before drilling and placing the dental implants," and his failure "to appropriately evaluate and treat the patient for an apparent injury to the left Inferior Alveolar Nerve." *Id.* at 5. According to Dr. Ruskin, "Dr. Simmons failed to use the requisite surgical skill, training, and precautions to perform the placement of dental implants in the #18 and 19 areas, and his failures resulted in the injury and damage to the patient's inferior alveolar nerve." *Id.* at 5-6.

In addition to Dr. Ruskin's Amended Report, Plaintiff has also supplied the Affidavit of Dr. Ruskin [102-1] which is dated October 20, 2014. This Affidavit was originally submitted in support of Plaintiff's Response [63] in opposition to Defendant's original Motion for Summary Judgment [52]. *Compare* Aff. of Dr. Ruskin [63-4] at 1-7, *with* Aff. of Dr. Ruskin [102-1] at 1-7. The Affidavit was originally filed before the Court reopened discovery and reset the dispositive motions deadline. *See* Order [70] at 9-10; *see also* Dec. 10 & 16, 2014, Text Only Amended Scheduling Orders. Dr. Simmons has not addressed the contents of this Affidavit [102-1] or asked that it be stricken. The Court may therefore properly, and will, consider the October 20, 2014, Affidavit [102-1], as a supplement to Dr. Ruskin's Amended Report. In his Affidavit, Dr. Ruskin opines that Dr. Simmons deviated from the standard of care in various respects by falling below the standards of a reasonably competent periodontist. Aff. of Dr. Ruskin [102-1] at 5-7.

-7-

Dr. Simmons has now filed a Motion for Summary Judgment [95] and a Motion to Exclude Plaintiff's Expert's Opinions [97]. Dr. Simmons asks the Court to exclude Dr. Ruskin's opinions, arguing that Dr. Ruskin's causation opinions are unreliable and lack a factual basis. Def.'s Mem. in Supp. of Mot. to Exclude [98] at 4-8. In his Motion for Summary Judgment, Dr. Simmons argues that because Dr. Ruskin has failed to articulate the applicable standard of care and has not identified a specific breach in the standard of care that caused her harm, Plaintiff cannot establish a *prima facie* case of dental or medical negligence against Dr. Simmons. Def.'s Mem. in Supp. of Mot. for Summ. J. [96] at 1, 7-8, 10-13. According to Dr. Simmons, Dr. Ruskin fails to provide the requisite information to support some of his opinions, and there is no evidence that other purported breaches of the standard of care caused Plaintiff's injuries. *Id.* at 13-16. Dr. Simmons also maintains that Plaintiff is bound by certain "admissions" contained in the Complaint regarding the cause of her lip and jaw area pain. *Id.* at 8-10.

## II.  DISCUSSION

A.   Dr. Simmons' Motion to Exclude [97] Dr. Ruskin's Opinions

1.   Legal Standard

Federal Rule of Evidence 702 provides that

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)   the testimony is based on sufficient facts or data;

-8-

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2]

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) (alteration in original) (quotation omitted). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quotation omitted). An expert must possess at least one, not necessarily all, of the requirements of "knowledge, skill, experience, training, *or* education" on the relevant subject in order to qualify as an expert. *United States v. Liu*, 716 F.3d 159, 168 (5th Cir. 2013) (emphasis in original) (quoting Fed. R. Evid. 702).

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or

---

[2]Plaintiff misinterprets the plain language of Rule 702 in her Response [102]. According to Plaintiff, because Dr. Ruskin is "qualified as an expert by knowledge, skill, experience, training, or education," he may testify as an expert at trial without the need to comply with subparts (a) through (d) of Rule 702. Resp. [102] at 3. This is simply incorrect; such an interpretation would fly in the face of the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). "In short, expert testimony is admissible only if it is both relevant and reliable." *Id.* at 244 (citing *Daubert*, 509 U.S. at 589). The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quotation omitted). "The reliability prong mandates that [an] expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (quotation omitted). In conducting the reliability inquiry, the following non-exclusive list of factors should be considered:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Id.* (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 593-94. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quotation omitted). "Ultimately, the trial court must also find an adequate fit between the

data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted).

Under Mississippi law, a *prima facie* case of medical, and therefore dental, malpractice requires proof of the following elements with the use of expert testimony:

> (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Estate of Sanders v. United States*, 736 F.3d 430, 435-36 (5th Cir. 2013) (quoting *Hubbard v. Wansley*, 954 So.2d 951, 956-57 (Miss. 2007)).[3]

"[T]he 'expert opinion of a doctor as to causation must be expressed in terms of medical probabilities as opposed to possibilities.'" *Id.* at 437 (quoting *Univ. Of Mississippi Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1202 (Miss. 2012)). "The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert." *Id.* at 436 (quoting *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009)).

2.   Analysis

Dr. Simmons does not appear to dispute that Dr. Ruskin is qualified to offer the opinions contained in his report. Dr. Ruskin is "currently engaged in the full

---

[3]"A dentist is liable for the same 'failure to exercise requisite skill and care' as a physician." *Saucier v. Hawkins*, 113 So. 3d 1277, 1282 n.8 (Miss. Ct. App. 2013) (quoting *Newport v. Hyde*, 147 So. 2d 113, 115 (1962)). Mississippi law applies the same standard for medical or dental malpractice claims. *Id.* at 1282.

time practice of Oral and Maxillofacial Surgery at Denver Health Medical Center." Am. Report [97-2] at 1.  Previously, Dr. Ruskin was a professor in the Department of Oral and Maxillofacial Surgery at the University of Florida College of Dentistry, from 1992 to 2013.  *Id.*  According to Dr. Ruskin, his areas of expertise include "implant dentistry, reconstructive surgery and the diagnosis and treatment of trigeminal nerve injuries."  *Id.*  The Court therefore finds that Dr. Ruskin is qualified by knowledge, skill, experience, training, or education in the relevant field.  Fed. R. Evid. 702; *see also Liu*, 716 F.3d at 168.

   a.   Reliability of Dr. Ruskin's Opinions Based Upon "Admissions" Made in the Complaint, a Purported Contradiction by Plaintiff's Treating Physician, and an Alleged Mischaracterization of Dr. Sittitavornwong's Findings

Dr. Simmons contends that Dr. Ruskin's opinion that "Plaintiff sustained a nerve injury to the left alveolar nerve under implant sites #18 and #19 during the drilling and placement of the implants" is unreliable because "Plaintiff has admitted that her injuries were the result of the bone graft performed on February 23, 2010."  Def.'s Mem. in Supp. of Mot. to Exclude [98] at 5.  Dr. Simmons points to Plaintiff's Complaint and argues that "Plaintiff is bound by what she alleged in the Complaint."  *Id.*

The Court does not read the allegations of Plaintiff's Complaint as limiting the cause of her injuries solely to the bone graft.  The Complaint addresses the periodontic treatment Plaintiff received from Dr. Simmons from January 12, 2010, to July 26, 2012, "which was to be carried out in several stages . . . ."  Compl. [1-1] at 5.  While the Complaint alleges that "Plaintiff started having issues with pain

and numbness in the area surrounding the osseous bone graft as well as numbness in her lower lip" after the bone graft, *id.* at 6, it also asserts that Dr. Simmons was "medically negligent and breached the requisite standard of care required by a physician performing an osseous bone graft *and insertion of dental implants*," *id.* at 8-9 (emphasis added).  The Court is not persuaded that the Complaint can be read so narrowly as to constitute an admission that Plaintiff's injuries were caused solely by the initial bone graft.

Moreover, Plaintiff testified in her deposition that the sensation she felt in her lower lip and on the left side of her jaw began when Dr. Simmons inserted the implants.  Dep. of Vera Johnson [95-1] at 14.  According to Plaintiff, the day after the implant placement, she called Dr. Simmons and informed him that "it felt like a nerve running down the side of [her] left jaw and it was stopping at [her] lip." *Id.* Dr. Simmons himself stated in his deposition that Plaintiff's "numbness, her ultimate discomfort was obviously related to the surgery we did."  Dep. of Dr. Jason Simmons [95-2] at 291.

Dr. Simmons also asserts that Dr. Ruskin's opinion that Dr. Simmons breached the IAN canal is directly contradicted by Plaintiff's treating physician, Dr. Pfeffle.  Def.'s Mem. in Supp. of Mot. to Exclude [98] at 5.  According to Plaintiff's Complaint, she was "first told that she may have nerve damage, but there was no 'obvious breach of [sic] canal.'" Compl. [1-1] at 8.  While the Complaint does not refer to him by name, it appears that this purported statement is attributable to Dr. Pfeffle.  *See id.*  The Court is not persuaded that Dr. Ruskin's opinion that the canal

was breached "directly contradict[s]" Dr. Pfeffle's statement that he could not
discern an "obvious breach" of the canal, as Dr. Simmons suggests. *See* Def.'s Mem.
in Supp. of Mot. to Exclude [98] at 5. Even if this did constitute a direct
contradiction, this discrepancy goes more to the weight to be accorded Dr. Ruskin's
testimony by the jury. Dr. Sittitavornwong testified that the trauma to the nerve
started inside the IAN canal, "just right at the beginning before it come [sic] out
from the mental nerve." Dep. of Dr. Somsak Sittitavornwong [95-5] at 59-60.

Dr. Simmons next asserts that Dr. Ruskin mischaracterizes Dr.
Sittitavornwong's findings when Dr. Ruskins states in his report that Plaintiff
suffered trauma to the nerve "beginning in the IAN canal under areas #18 and #19
and ending around the left mental foramen." Def.'s Mem. in Supp. of Mot. to
Exclude [98] at 6 (citing Am. Report [97-2] at 4). According to Dr. Simmons, there is
no evidence to support this assumption. *Id.* However, based upon a review of Dr.
Sittitavornwong's testimony and records, the Court is not persuaded that this was
necessarily an incorrect assumption. Dr. Sittitavornwong testified that he observed
"scar adhesion" around the nerve in the "area" of locations 18 and 19, but "probably
more interior" or "[t]o the front," Dep. of Dr. Somsak Sittitavornwong [95-5] at 45,
49, 52, which continued to the mental foramen, *id.* at 60. The Court cannot say that
Dr. Ruskin has mischaracterized Dr. Sittitavornwong's findings or that any
mischaracterization which has occurred is sufficiently serious to warrant excluding
Dr. Ruskin's testimony at trial. Dr. Simmons' argument goes more to the weight
than the admissibility of Dr. Ruskin's opinions.

       b.    <u>Defendant's Arguments That Dr. Ruskin Has Not Identified a</u>
              <u>Standard of Care or a Breach of Any Standard</u>

According to Dr. Simmons, Dr. Ruskin's opinions on the following topics should be excluded because Dr. Ruskin fails to articulate any specific recognized dental standard of care or any specific facts to support the opinions:

> that Dr. Simmons (1) failed to *properly perform* preoperative and postoperative evaluations and *document* his findings; (2) failed to *document* the medical necessity for multiple procedures; (3) failed to *appropriately evaluate and treat* Mrs. Johnson for an injury to the left Inferior Alveolar Nerve; (4) failed to refer Mrs. Johnson in a *timely* fashion to a *practitioner* skilled in evaluating and treating trigeminal nerve injuries; (5) failed to use the *requisite* surgical skill to perform "placement" of dental implants in the "#18 and #19 areas."

Def.'s Mem. in Supp. of Mot. to Exclude [98] at 5-6 (emphasis in original) (citing Am. Report [97-2] at 5-6).

The Court will address each of these contentions in turn.

       (i)    <u>Dr. Simmons' Alleged Failure to Perform Preoperative and</u>
              <u>Postoperative Evaluations and Document His Findings and Dr.</u>
              <u>Simmons' Alleged Failure to Appropriately Evaluate and Treat Injury</u>
              <u>to the Left Inferior Alveolar Nerve and to Timely Refer Mrs. Johnson</u>

According to Dr. Ruskin's Affidavit,

> [a] minimally competent periodontist would properly perform preoperative and postoperative evaluations, including the taking of diagnostic x-ray films with radiopaque markers to measure distance and correct for distortion, and would properly document these findings.

Aff. of Dr. Ruskin [102-1] at 5-6. Dr. Ruskin believes that Dr. Simmons failed to properly evaluate Plaintiff "on multiple occasions" and failed to document those findings. *Id*. at 6. Dr. Ruskin's Affidavit suggests that due to the absence of accurate preoperative evaluations, Dr. Simmons did not keep the typical 2 mm distance from the bottom of the implants to the superior aspect of the IAN canal,

such that the final placement of the implants was at the superior border of the IAN canal. *Id.* at 4-5. Because the osteotomy drill is slightly longer than the implant being placed, Dr. Ruskin theorizes that Plaintiff's injury was caused by the osteotomy of the implant entering the IAN canal. *Id.* at 5.

Based on the foregoing, the Court finds that Dr. Ruskin has articulated the standard of care, a purported breach of that standard, and a theory of causation of Plaintiff's injuries in connection with Dr. Simmons' alleged failure to make proper preoperative evaluations of Plaintiff. Reading Dr. Ruskin's opinions as a whole, he expresses the view that the lack of preoperative evaluations resulted in Dr. Simmons allowing the osteotomy of the implant to enter the IAN canal. *See id.* To the extent Dr. Simmons' Motion to Exclude seeks to strike Dr. Ruskin's opinion that Dr. Simmons failed to make preoperative evaluations, the Motion will be denied.

As for postoperative evaluations, Dr. Ruskin does not sufficiently identify what postoperative evaluations Dr. Simmons should have conducted. Dr. Ruskin opines in his Affidavit that

> [a] reasonably competent periodontist would appropriately evaluate and treat a patient for an apparent injury to the left inferior alveolar nerve by timely referring the patient to an outside practitioner specializing in the treatment of nerve injuries. Dr. Simmons fell below the standards of a minimally competent periodontist by failing to appropriately evaluate and treat the patient for an apparent injury to the left Inferior Alveolar Nerve by not referring her to a nerve specialist.

Aff. of Dr. Ruskin [102-1] at 6. Moreover,

> Dr. Simmons fell below the standard of a minimally competent periodontist when he failed to refer the patient in a timely fashion to a practitioner skilled in the evaluation and treatment of trigeminal nerve injuries.

*Id.* "Due to the time elapsed from the time of injury until repair was attempted, the patient was not afforded the best chance for a successful resolution of her problem." *Id.* at 5.

> The Mississippi Supreme Court has concluded that
>
> Mississippi law does not permit recovery of damages because of mere diminishment of the "chance of recovery." Recovery is allowed only when the failure of the physician to render the required level of care results in the loss of a reasonable probability of substantial improvement of the plaintiff's condition.

*Ladner v. Campbell*, 515 So. 2d 882, 888 (Miss. 1987) (quoting *Clayton v. Thompson*, 475 So. 2d 439, 445 (Miss. 1985)).

Mere diminishment of the chance of recovery constitutes inadequate proof of proximate cause in a medical malpractice case. *Id.* at 889 (citing 54 A.L.R. 4th 10 § 4). The Mississippi Supreme Court has "rejected the notion that mere 'better result absent malpractice' would meet the requirements of causal connection." *Id.* "Further, the 'expert opinion of a doctor as to causation must be expressed in terms of medical probabilities as opposed to possibilities.'" *Estate of Sanders*, 736 F.3d at 437 (quoting *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1202 (Miss. 2012)). A "plaintiff must establish 'with evidence that it was probable, or more likely than not, that the patient would have been helped by proper treatment." *Id.* (quoting *Ladner*, 515 So. 2d at 888).

While Dr. Ruskin attempts to establish causation by opining that Dr. Simmons' alleged delay resulted in Plaintiff not being "afforded the best chance for a successful resolution of her problem," *id.*, this is insufficient evidence of causation to permit recovery for a purported breach in the standard of care under Mississippi

law.  Dr. Ruskin's use of the vague term "best chance" does not adequately quantify Plaintiff's chances of recovery or opine as to at what point earlier surgical intervention would have yielded a better outcome, and is insufficient to create a triable issue of fact on the question of causation.  *See Estate of Sanders*, 736 F.3d at 438.  Because Dr. Ruskin's opinions do not establish the requisite causation, they are irrelevant to any issue in this case and are inadmissible.  *See Daubert*, 509 U.S. at 589; *Pipitone*, 288 F.3d at 243-44; *see also Estate of Sanders*, 736 F.3d at 438. This portion of Dr. Simmons' Motion will be granted.

       (ii)   <u>Dr. Simmons' Alleged Failure to Document Medical Necessity</u>

      According to Dr. Ruskin's Amended Report [97-2] and Affidavit [102-1], Dr. Simmons failed to document the medical necessity of performing multiple procedures, including the grafting of the alveolar ridge, evaluating the nerve injury to the left IAN, removing the implants in the #18 and #19 sites, and treating Plaintiff with antibiotics.  Am. Report [97-2] at 5; Aff. of Dr. Ruskin [102-1] at 7. However, neither the Amended Report nor the Affidavit explain how not documenting the medical necessity of these actions caused Plaintiff's injuries. Without a causal link, this opinion is not relevant to Plaintiff's claims because an expert must testify consistent with Mississippi law that the injury to a plaintiff was proximately caused by the breach of a duty by the defendant.  *See Estate of Sanders*, 736 F.3d at 435-36.  Because Dr. Ruskin's opinions regarding documentation are irrelevant, this portion of Dr. Simmons' Motion will be granted, and these opinions will be excluded at trial.  *See Daubert*, 509 U.S. at 589; *Pipitone*, 288 F.3d at 243-44.

(iii)   <u>Dr. Simmons' Alleged Failure to Use the Requisite Surgical Skill to Perform "Placement" of Dental Implants</u>

According to Dr. Ruskin,

[a] minimally competent periodontist would exercise the minimally competent surgical skill to insure that his surgical instrument and/or implants themselves do not come closer than 2 mm from the inferior alveolar canal, and certainly do not penetrate the canal. Dr. Simmons failed to use the requisite surgical skill, training, and precautions to of [sic] a minimally competent periodontist to perform the placement of dental implants in the #18 and 19 areas, and his failures resulted in the injury and damage to the patient's inferior alveolar nerve.

Aff. of Dr. Ruskin [102-1] at 7. As it relates to Dr. Simmons' placement of the implants, Dr. Ruskin has sufficiently articulated the standard of care and a breach of that standard, and has opined this breach was the cause of Plaintiff's injuries. *See id.* Plaintiff has therefore demonstrated that Dr. Ruskin's opinions on this point are sufficiently relevant and reliable to withstand *Daubert* scrutiny. Dr. Simmons' Motion will be denied to the extent he seeks to exclude Dr. Ruskin's opinions regarding Dr. Simmons' placement of the implants.

(iv)   <u>Summary</u>

Based on the foregoing, Dr. Ruskin's opinions regarding Dr. Simmons' alleged failure to conduct postoperative evaluations of Plaintiff and document his findings, to document medical necessity, to evaluate and treat Plaintiff for an apparent injury to the left IAN by timely referring her to a practitioner specializing in the treatment of nerve injuries, and to otherwise timely refer her to another practitioner will be excluded at trial. Plaintiff will also not be permitted to advance any theory of negligence or attempt to hold Dr. Simmons liable at trial based upon

the foregoing theories of negligence since Dr. Ruskin has been precluded from testifying on these subjects.[4]

Dr. Ruskin will be permitted to opine that Plaintiff sustained a nerve injury to the left alveolar nerve under implant sites #18 and #19 when Dr. Simmons breached the IAN canal during the drilling and placement of the implants, that Plaintiff suffered trauma to the nerve beginning in the IAN canal under areas #18 and #19 and ending around the left mental foramen, that Dr. Simmons failed to properly perform preoperative evaluations, and that Dr. Simmons failed to use the requisite surgical skill to perform the placement of the implants in the #18 and #19 areas.  Defendant's Motion to Exclude will therefore be granted in part and denied in part.

B.    Dr. Simmons' Motion for Summary Judgment [95]

1.    Legal Standard

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine

_____

[4]Based upon the record before the Court, it appears that Dr. Ruskin is Plaintiff's only designated expert.  *See* Pl.'s Designation [61-1] at 1-3.

issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000). "A genuine dispute of material fact means that evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R*

*Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the

evidence is merely colorable, or is not significantly probative, summary judgment is

appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671

F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986)). In deciding whether summary judgment is appropriate, the Court

views facts and inferences in the light most favorable to the nonmoving party. *RSR*

*Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

    2.  <u>Analysis</u>

      Much of Dr. Simmons' Motion for Summary Judgment repeats the arguments

about the alleged deficiencies in Dr. Ruskin's expert opinions raised in Dr.

Simmons' Motion to Exclude. The Court has already resolved these arguments. Dr.

Simmons asserts that Plaintiff cannot establish a *prima facie* case of dental or

medical negligence because Plaintiff fails to identify the standard of care, a breach

of the standard of care, and causation. Mem. in Supp. of Mot. for Summ. J. [96] at

7-8, 11-16. However, as the Court has already determined, Dr. Ruskin has

sufficiently articulated the standard of care, a breach of that standard, and the

requisite causation of Plaintiff's injuries based upon the alleged failure of Dr.

Simmons to make preoperative evaluations of Plaintiff and to properly place the

implants.  Dr. Simmons' Motion for Summary Judgment on this basis should be denied.

To the extent that Dr. Simmons argues that Dr. Ruskin fails to articulate the standard of care applicable to placement of Plaintiff's bone graft, this argument is moot.  Plaintiff has apparently abandoned any claim that her injury was sustained during the bone graft.  Instead, Dr. Ruskin opines that Plaintiff's "injury occurred during the drilling and placement of the implants around the #19 and #18 sites . . . more likely than not during the drilling of the implants in the #18 and #19 sites." Aff. of Dr. Ruskin [101-4] at 5.  Moreover, Plaintiff testified in her deposition that the pulsing nerve pain which ran from her jaw to her lip began immediately after the implant procedure.  Dep. of Vera Johnson [95-1] at 62-63, 77.  Dr. Simmons' argument on this point is therefore moot.

Dr. Simmons contends again that Plaintiff is bound by admissions in her Complaint that her injury occurred during the bone graft, rather than during the procedure to place the implants.  Mem. in Supp. of Mot. for Summ. J. [96] at 8-10. The Court has previously determined that it does not read Plaintiff's Complaint so narrowly, and summary judgment on this basis will be denied.

Viewing all facts and inferences in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has presented sufficient evidence to create genuine fact questions as to the elements of a *prima facie* case of dental malpractice against Dr. Simmons.  *See Estate of Sanders*, 736 F.3d at 435-36; *see also RSR Corp.*, 612 F.3d at 858.  Genuine disputes of material fact in this case include, but are not limited

to, whether Dr. Simmons breached the applicable standard of care during his preoperative evaluation of Plaintiff, whether he breached the applicable standard of care in placing the implants, and whether any breach of the standard of care by Dr. Simmons proximately caused Plaintiff's injuries.  Summary judgment is therefore inappropriate.  *See* Fed. R. Civ. P. 56(a).

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  For the reasons stated more fully herein, the Court will grant in part and deny in part Dr. Simmons' Motion to Exclude Plaintiff's Expert's Opinions and will deny Dr. Simmons' Motion for Summary Judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Exclude Plaintiff's Expert's Opinions [97] filed by Defendant Jason B. Simmons is **GRANTED IN PART and DENIED IN PART**.  The Court will exclude at trial Dr. Ruskin's opinions regarding Dr. Simmons' alleged failures (1) to conduct postoperative evaluations of Plaintiff and document his findings, (2) to document medical necessity, (3) to evaluate and treat Plaintiff for an apparent injury to the left IAN by timely referring her to a practitioner specializing in the treatment of nerve injuries, and (4) to otherwise timely refer her to another practitioner.  The Motion to Exclude Plaintiff's Expert's Opinions [97] is **DENIED** as to Dr. Ruskin's opinions (1) that Plaintiff sustained a nerve injury to the left alveolar nerve under implant sites #18 and #19 when Dr. Simmons breached the IAN canal during the

drilling and placement of the implants, (2) that Plaintiff suffered trauma to the nerve beginning in the IAN canal under areas #18 and #19 and ending around the left mental foramen, (3) that Dr. Simmons failed to properly perform preoperative evaluations, and (4) that Dr. Simmons failed to use the requisite surgical skill to perform the placement of the implants in the #18 and #19 areas.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [95] filed by Defendant Jason B. Simmons is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 21st day of August, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE